IN THE UNTIED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 3:11-cr-00083-19 |
| v. | ) | Chief Judge Haynes |
| | ) | |
| JUANA EDITH VELA-SALINAS | ) | |

**M E M O R A N D U M**

Before the Court are the Defendant Juana Edith Vela-Salinas's motion for a bill of particulars (Docket Entry No. 685); motion to dismiss or to elect an offense (Docket Entry No. 687); to serve (Docket Entry No. 695); and for a change of venue (Docket Entry No. 715) to which the Government filed its responses (Docket Entry Nos. 701, 710, 711 and 716). After a review of the parties' motion papers and for the reasons set forth below, the Court concludes that the Defendant's motions should be denied.

**1. Defendant's Motion for Bill of Particulars**

In her motion for a bill of particulars, the Defendant seeks the "exact dates" for (1) the co-conspirator, David Lopez's alleged deliveries of drug proceeds to her at the direction of her husband and co-defendant, Aldo Villarreal; (2) Lopez's statement providing co-defendant Villarreal with the keys to a vehicle described as "loaded"; (3) all of this Defendant's overt acts; and (4) the "specific criminal conduct that the Government alleges Ms. Vela-Salinas committed in violation of federal law."

In response, the United States asserts, in sum: (1) that the Defendant was provided with all statements, with some disclosures of Jencks Act and <u>Giglio</u> materials: (2) that this Defendant is charged with a conspiracy to launder money in violation of 18 U.S.C. Section 1956(h) that does not

1

require proof of any overt acts, citing <u>Whitfield v. United States</u>, 543 U.S. 209, 219 (2005); and (4) the discovery provided to this Defendant includes financial records with the dates of this Defendant's conduct as well as conduct of her co-conspirator husband.

The Indictment lists five distinct substantive money laundering offenses which this Defendant, with her husband and other co-conspirators, is alleged to have conspired to commit. This Defendant is only charged with conspiring to commit those offenses, not with the substantive offenses. Specifically, Count Two alleges defendant did "conspire ... to commit the following offenses" and then lists five substantive money laundering offenses defined in Section 1956(a) which were the objects of the conspiracy, that is a violation of 18 U.S.C. Section 1956(h). Thus, Count Two is not "duplicitous." See <u>United States v. Hynes</u>, 467 F.3d 951, 964 (6th Cir.2006). The jury will be instructed that the five substantive money laundering offenses are to be considered only as the objects of the conspiracy in Count Two and consider only whether this Defendant agreed with another defendant to commit any of those substantive offenses.

The majority of the Government's evidence of Defendant's participation in the conspiracy is reflected in bills of sale of vehicles purchased in Nashville and the bank statements or other financial records of the Defendant and her husband. These bank records include checks written by co-defendant Villarreal and this Defendant to purchase vehicles from two Nashville used car dealers, including Zeeshan Syed, the lead defendant. This Defendant's bank records also contain checks written by the defendant either to herself, to El Shadai, or to "cash" as well as numerous withdrawals of cash during the period charged in the indictment. The United States also provided this Defendant with a summary of the vehicle bills of sale and the cash deposit in the Defendants' bank accounts. The vast majority of the deposits were in amounts of less than $10,000, often just less than $10,000.

In a letter dated May 3, 2013, the Assistant United States Attorney ("AUSA") also provided to Defendant's prior counsel an analysis of Defendant's financial records. "To help you review the financial records and discuss them with Ms. Vela-Salinas when you meet with her, the following is a summary of what I believe the records describe." (Sealed Exhibit 2 at 2). This May 3, 2010 letter also included reports of statements by several key cooperating witnesses and later the cooperating co-conspirator, David Lopez, in a meeting with agents and the Defendant and her counsel in December 2013. The United States also provided this Defendant a United States Border Patrol report. In January 2010, within the time period charged in the indictment, the Defendant was seized carrying large amounts of cash as she and her husband attempted to cross into Mexico. This report describes this Defendant as denying possession of any money, but a search revealed $9,938 in cash in her purse.

The purpose of a bill of particulars is to apprise a defendant of the essential facts of the crime with which she is charged, but it is not meant as "a tool for the defense to obtain detailed disclosure of all evidence held by the government before trial." United States v. Salisbury, 983 F.2d 1369, 1375 (6th Cir. 1993). Upon review of the Government's response, and the attachments thereto, the Court concludes this Defendant's motion for bill of particulars should be denied.

## 2. Defendant's Motion to Dismiss

In this motion, the Defendant seeks dismissal of all charges or an Order directing the Government to elect offense (Docket Entry Nos. 687 and 688), contending, in essence that Count Two charges her with substantive violations of different subsections of Section 1956(a). Count Two charges Defendant only with conspiring to launder money in violation of Section 1956(h). Title 18 U.S.C. Section 1956(h) provides "Any person who conspires to commit any offense defined in this

3

section or section 1957 shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy."

"A conspiracy to commit a crime is a different offense from the crime that is the object of the conspiracy." United States v. Van Hee, 531 F.2d 352, 357 (6th Cir. 1976). An indictment is not duplicitous despite allegations of the multiple means of committing the single conspiracy. United States v. Damrah, 412 F.3d 618, 622 (6th Cir. 2005). See also United States v. Hixon, 987 F.2d 1261, 1265 (6th Cir.1993) ("where a penal statute ... prescribes several alternative ways in which the statute may be violated and each is subject to the same punishment, ... the indictment may charge any or all of the acts conjunctively, in a single count ....") (internal quotation marks omitted).

The Committee Commentary on Pattern Instruction 3.01A reflects that Count Two is properly charged. The Committee Commentary to 3.01A states, in relevant part, as follows:

> The Supreme Court has long recognized that "the commission of the substantive offense and a conspiracy to commit it are separate and distinct offenses." See, e.g., Pinkerton v. United States, 328 U.S. 640, 643 (1946). As stated by the Sixth Circuit in United States v. Van Hee, 531 F.2d 352, 357 (6th Cir. 1976), "A conspiracy to commit a crime is a different offense from the crime that is the object of the conspiracy." An equally well-settled corollary is that to convict a defendant of conspiracy does not require proof that the object of the conspiracy was achieved. See, e.g., United States v. Fruehauf Corp., 577 F.2d 1038, 1071 (6th Cir. 1978). "The gist of the crime of conspiracy is the agreement to commit an illegal act, not the accomplishment of the illegal act." Id.

In a word, Count Two does not allege both conduct and attempts to commit substantive money laundering offenses.

As to Defendant's reliance on United States v. Adesida, 129 F.3d 846 (6th Cir. 1997), the charge there was a conspiracy "to knowingly, willfully, intentionally, and unlawfully import and attempt to import" heroin in violation of Title 21 U.S.C. Sections 952 and 963. Id. at 848 (emphasis

4

added). As does Section 846, Section 963 provides that any person "who attempts or conspires to commit an offense defined in this subchapter is subject to the same penalties as those prescribed for the offense." (emphasis added). Under Section 963, as with Section 846, the charge must be either an attempt or a conspiracy, not both. Yet, Section 1956(h) does not include attempts to commit a conspiracy, only conspiracies. Thus, the Court concludes that Adesida is inapposite. For these reasons, this Defendant's motion to dismiss should be denied.

### 3. Defendant's Motion to Sever

In earlier proceedings, this Defendant filed a motion to sever (Docket Entry No. 669) that the Court orally denied during a hearing and thereafter entered a written Order. (Docket Entry Nos. 682 and 683). At that hearing, Defendant and her counsel agreed to meet with the Assistant United States Attorneys to hear the prosecution's view of expected proof evidence at trial. At the meeting, the lead Assistant United States Attorney made two plea offers to this Defendant, but after consulting with her counsel, the meeting ended. In her motion, this Defendant asserts that during this meeting, the lead Assistant United States Attorney described the "spillover effect" of the Government's proof that would cause the jury to convict this Defendant. The lead AUSA denies that he told her the jury will find her guilty because the jury will find her husband co-defendant Villarreal guilty.

As this Court noted at the May 19, 2014 status conference, members of a conspiracy are responsible for the reasonably foreseeable acts of their co-conspirators done in furtherance of the conspiracy. See, e.g., Pinkerton v. United States, 328 U.S. 640 (1946). See also Sixth Circuit Pattern Criminal Jury Instructions, No. 3.10: Pinkerton Liability For Substantive Offenses Committed By Others.

The Defendant's cites Zafiro v. United States, 506 U.S. 534 (1993), and United States v.

Gallo, 763 F.2d 1504 (6th Cir. 1985) to justify a severance due to a "spillover effect." In Zafiro, two defendants sought severance based upon mutually antagonistic defenses. 506 U.S. at 536. In upholding the district court's denial of a severance, the Court stated "[t]here is a preference in the federal system for joint trials of defendants who are indicted together" and that Rule 14 "does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." Id. at 537, 538-39. Moreover, a severance is warranted only where a serious risk exists that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence. Id. at 539. The Court also noted that limiting instructions will often cure any risk of prejudice. Id.

In Gallo, the Government charged counts relating to murder, narcotics distribution, and gambling, including racketeering, continuing criminal enterprise, Travel Act, drug conspiracy, and other related offenses, 763 F.2d at 1508. Yet, the Sixth Circuit rejected a defendant "'spillover effect'" argument, Id. at 1525, absent a showing of "substantial" prejudice, "spillover of evidence from one case to another does not require severance." Id. Gallo also noted that "[m]erely because inflammatory evidence is admitted against one defendant, not directly involving another codefendant (and with which the other is not charged) does not, in and of itself, show substantial prejudice in the latter's trial." Id.

Here, the Government's proof on this Defendant consists principally of bank records that are not "inflammatory" evidence. Co-defendant Villarreal's alleged drug trafficking may be "inflammatory," but the Defendant is charged only with conspiring with him to launder the proceeds of his drug trafficking. The Defendant and Villarreal are married, held joint bank accounts through

6

which drug proceeds were allegedly laundered, jointly owned a car lot in Texas through which they allegedly laundered money, and were both caught carrying a large amount of cash into Mexico in the same vehicle during the period of the money laundering conspiracy. A joint trial has a legitimate basis.

Thus, the Court concludes that the Defendant has not met her burden of substantial prejudice if she and co-Defendant Villarreal are tried together. The Court will give a limiting instruction before and after proof that the jury must decide the guilt or innocence of each Defendant. See Sixth Circuit Criminal Jury Instructions Nos. 2.01B and 2.01D.

### 4. Defendant's Motion for Change of Venue

In this motion, Plaintiff alleges venue is improper in this District and seeks a transfer of this action to McAllen, Texas. Defendant is charged in Count Two with conspiring with her husband and co-defendant, Aldo Villarreal, and others to launder money in violation of Title 18 U.S.C. Section 1956(h). (Docket No. 547). In sum, the five alleged objects of the conspiracy are as follows: The first two involved the proceeds of drug trafficking with the intent to promote the drug trafficking, or knowing that the transactions were to conceal and disguise the true nature, source, ownership, and control of the proceeds. The third substantive offense is comprised of the financial transactions involving the drug trafficking proceeds and knowing those transactions to be designed in whole and in part to avoid a transaction reporting requirement under federal law. The fourth and fifth offenses are the transporting or attempted transport of funds from a place in the United States to and through a place outside the United States with the intent to promote drug trafficking, or knowing that the transactions were designed to conceal and disguise the nature, source, ownership, and control of drug proceeds.

The Government's evidence of defendant's participation in the money laundering conspiracy is reflected in sales of vehicles in Nashville and related bank statements or other financial records of the Defendant and her husband. A large number of checks that were written by both Villarreal and the Defendant was to purchase vehicles from two Nashville used car dealers. In sum, this Defendant wrote checks for vehicles sold in this District as well as checks to purchase vehicles in this District. This Defendant received in discovery a summary of the vehicle bills of sale that reflects approximately $500,000 for vehicles sold in this District, but then titled those vehicles to either Villarreal or El Shadai.

The Government expects approximately 30 witnesses in its case-in-chief that will take at least two to three weeks. The two lead case agents and approximately ten other agents and officers are in this District, as are a dozen or so non-law enforcement witnesses. Ten cooperating co-conspirators are in federal custody in this District. Several DEA chemists from Florida, a few DEA agents from Atlanta, and a Border Patrol officer are witnesses outside this District. This Defendant asserts that she intends to call at least thirteen witnesses from south Texas, but does not identify the witness nor describe the witnesses' expected testimony.

Rule 18 of the Federal Rules of Criminal Procedure, "Place of Prosecution and Trial" states, "[u]nless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed. The court must set the place of trial within the district with due regard for the convenience of the defendant, any victim, and the witnesses, and the prompt administration of justice." (Emphasis added). In a word, offenses charged in the indictment were committed in this District and thus, venue in this District is proper. In United States v. Beddow, 957 F.2d 1330 (6th Cir. 1992), the sale of drugs in a district was held to provide venue for a money

laundering charge in that district. The Sixth Circuit concluded that "it is clear that the funds involved in both money laundering counts were acquired by selling drugs in the Western District of Michigan." Id. The Sixth Circuit also noted that "the Supreme Court has held that venue is proper in a district where a coconspirator has carried out overt acts *even if the defendant never entered that district.*" United States v. Logan, 542 Fed.Appx. 484, 492-93 (6th Cir. 2013) (citing United States v. Rodriguez–Moreno, 526 U.S. 275, 281 (1999) (emphasis added). Given the number of witnesses for the United States, a transfer in this action to McAllen, Texas is certain to be cost prohibitive. This Court finds that by a preponderance of the evidence, the United States has proved venue in this District proper.

As to Rule 21(a) and Rule 21(b) of the Federal Rules of Criminal Procedure, Rule 21(a) requires a transfer only if this Court finds that the prejudice to defendant in this District is "so great … that the defendant cannot obtain a fair and impartial trial" here. Rule 21(b) grants discretion on the Court to transfer an action for the convenience of the parties, any victim, the witnesses, and in the interest of justice. As to this Defendant's convenience argument for her thirteen witnesses, Defendant asserts the travel costs for these witnesses for a trial and Tennessee will be "extremely high." (Motion at 8). This Defendant relies primarily upon United States v. Williams, 274 F.3d 1079 (6th Cir. 2001). In Williams, as a government informant who falsely told the defendant that he intended to sell drugs in Michigan, was held not to be a co-conspiratorm, rendering venue in Michigan improper. Id. at 1084. Williams is factually inapposite. This Defendant used drug proceeds from the charged conspiracy to purchase vehicles in this District. Under Rule 21(a), "the trial court must transfer the case only if 'the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial

9

there.'" United States v. Sypher, 684 F.3d 622, 627 (6th Cir. 2012) (quoting United States v. Jamieson, 427 F.3d 394, 412 (6th Cir. 2005) (quoting Fed.R.Crim.P. 21(a)).

As to whether she can receive a fair and impartial trial in this district, Defendant also asserts that she is Hispanic and the jury pool in this District is composed of fewer Hispanic females than the jury pool in her hometown of McAllen, Texas. Defendant simply argues she "will not have a jury of her peers or anything close to that" and that a transfer of venue is therefore required. (Motion, at 16-17). In Holland v. Illinois, 493 U.S. 474, 480 (1990), the Supreme Court stated, "The Sixth Amendment requirement of a fair cross section on the venire is a means of assuring, not a representative jury (which the Constitution does not demand), but an impartial one (which it does)." (Emphasis in original). The Fourteenth Amendment requires only a racially neutral jury selection process. See Batson v. Kentucky, 476 U.S. 79, 85 (1986). A defendant is not entitled to trial in a venue where the racial composition of the jury pool is more favorable to the defendant. See, e.g., United States v. Cannon, 88 F.3d 1495 (8th Cir. 1996), overruled on other grounds, Watson v. United States, 552 U.S. 74 (2007). The Sixth Circuit has held that a statistical difference in race between two districts' jury pool does not satisfy the burden to justify a transfer. United States v. Logan, 542 Fed. Appx. 484, 493 (6th Cir. 2013) (where a defendant on a venue issue, "simply asserted in a conclusory manner that Michigan is less racially diverse than California. Even if this were enough to meet his burden to show that the prosecution had a discriminatory effect (and it is not) he still would fail to meet his burden with regard to discriminatory intent"). The Court concludes this Defendant has not shown any prejudice.

An appropriate Order is filed herewith.

**ENTERED** this the _____ day of July, 2014.

_____
WILLIAM J. HAYNES, JR.
Chief United States District Judge