IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) NO. 3:11-cr-00083-19 |
| v. | ) |
| | ) JUDGE RICHARDSON |
| JUANA VELA-SALINAS | ) |

## **MEMORANDUM OPINION**

Pending before the Court is Defendant's pro-se motion that requests, alternatively, compassionate release under 18 U.S.C. § 3582(c)(1)(A),[1] a sentence modification (reduction) under 18 U.S.C. § 3582(c)(2), and appointment of counsel (Doc. No. 1236, "Motion"). The Government has responded in opposition to Defendant's Motion. (Doc. No. 1250, "Response").

For the reasons set forth herein, the Court agrees with the Government that Defendant has not established extraordinary or compelling reasons as required for release under 18 U.S.C. § 3582(c)(1)(A). In addition, the Court has independently assessed Defendant's eligibility for relief under 18 U.S.C. § 3582(c)(2) and finds that Amendment 821 affords Defendant no grounds for relief. The Court also finds that Defendant fails to present any unique circumstances justifying appointment of counsel. Accordingly, Defendant's Motion is denied.

---

[1] A motion under Section 3582(c)(1)(A) is a motion for a reduction in sentence, including but not limited to reductions that would result in the defendant-movant's immediate release. The granting of a motion for sentence *reduction* under Section 3582(c)(1)(A) would not necessarily result in the defendant's immediate *release*. *See United States v. Maumau*, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at *8 (D. Utah Feb. 18, 2020) (quoting *United States v. Urkevich*, No. 8:03CR37, 2019 WL 6037391 at *4 (D. Neb. Nov. 14, 2019)). Nevertheless, such motions generally are known as ones for "compassionate release." *Id.* at n.2 ("In this order, the court uses the phrase 'compassionate release' and 'sentence modification' interchangeably, which is consistent with how other courts have used the terms."); *United States v. McDonald*, No. 94-CR-20256-1, 2020 WL 3166741, at *1 (W.D. Tenn. June 8, 2020). This reflects the fact they typically do seek immediate release rather than a mere reduction in sentence that would result in an earlier release someday but not immediately.

BACKGROUND

On April 20, 2011, a grand jury charged eighteen (18) defendants, including Defendant's husband, Aldo Villarreal, with conspiracy to distribute and distribution of five (5) kilograms or more of a mixture and substance containing cocaine and 100 kilograms or more of a mixture and substance containing marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count One). (Doc. No. 45). Thereafter, a superseding indictment was filed against eight (8) of those eighteen (18) defendants. (Doc. No. 457). Then, on April 3, 2013, Defendant, along with four (4) of the eight (8) charged in the (first) superseding indictment, was charged in a six-count second superseding indictment. (Doc. No. 547).

Defendant was charged only in Count Two, which charged her (and three of her four co-defendants) with conspiring to commit five different object offenses—each of which was an offense in the nature of laundering proceeds of federal drug-trafficking crimes, in violation of some provision of 18 U.S.C. § 1956(h)—in connection with Count One.

On July 28, 2015, after a nine-day jury trial, a jury found Defendant guilty on Count Two. (Doc. No. 940). On December 21, 2015, United States District Judge William J. Haynes, Jr. sentenced Defendant to 240 months of imprisonment, followed by three (3) years of supervised release. (Doc. No. 1091). Defendant has been serving her sentence at FCI Aliceville. According to the Bureau of Prisons ("BOP"), Defendant's release date is April 18, 2029. *See Federal Inmate Locator*, Bureau of Prisons, https://www.bop.gov/inmateloc/ (last accessed February 20, 2025).

ANALYSIS

I.  *Request for Appointment of Counsel*

Given that Defendant seeks relief pursuant to 18 U.S.C. § 3582(c)(2), the Court ordered the Office of the Federal Public Defender ("FPD") to select counsel to confer with Defendant "for

the limited purpose of determining whether Defendant desires representation with respect to relief associated with any retroactive Amendment to the United States Sentencing Guidelines." (Doc. No. 1237, PageID #:7929). On May 24, 2024, the FPD filed a notice to inform the Court that the consultation with Defendant had taken place, and that Defendant "wishes to proceed pro se" with respect to her Motion. (Doc. No. 1242). In light of the fact that Defendant expressly elected to proceed pro se after consulting with the FPD, the Court is disinclined to appoint counsel. (*Id*.).

As for appointing counsel in relation to relief sought under 18 U.S.C. § 3582(c)(1)(A) (compassionate release), the Court finds that Defendant failed to show such unique circumstances that would require appointment of counsel. The decision of whether to appoint counsel for the purpose of seeking compassionate release is a decision within the sound discretion of the Court.[2] *United States v. Woods*, No. 2:03-CR-069, 2020 WL 5805324, at *3 (E.D. Tenn. Sept. 28, 2020). "In exercising discretion as to whether to appoint counsel, a court should consider several factors, including the nature of the case, whether the issues are legally or factually complex, and the litigant's ability to present the claims for relief to the court." *Id*. (citing *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993)).

A compassionate-release request is not a particularly complex claim factually or legally. *See United States v. Drayton*, No. 10-20018-01, 2020 WL 2572402, at *1 (D. Kan. May 21, 2020) (denying motion to appoint counsel related to motion for compassionate release and noting that compassionate-release claims are not particularly complex factually or legally and that the defendant appeared able to adequately present his claim unrepresented). Defendant has failed to

---

[2] The Sixth Amendment secures the right of a criminal defendant who faces incarceration to be represented by counsel at all "critical stages" of the criminal process. *United States v. Stephens*, No. 06-CR-20365, 2020 WL 3250226, at *2 (E.D. Mich. June 16, 2020) (citing *United States v. Wade*, 388 U.S. 218, 224 (1967). It does not extend to motions for post-conviction relief. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *Shedwick v. Warden N. Cent. Corr. Inst.*, No. 16-3203, 2016 WL 11005052 (6th Cir. Dec. 30, 2016) ("[T]here is no right to counsel in a post-conviction action.").

articulate why she is unable to present her request for compassionate release pro se. Furthermore, the Court believes that it can fairly adjudicate such motions even though one side (and not the other) is unrepresented by counsel, as the compassionate-release arguments presented by Defendant are straightforward, and not beyond the capability of an ordinary pro-se litigant.

Accordingly, Defendant's request for appointment of counsel is denied.

II.  *Motion for Compassionate Release, under 18 U.S.C. § 3582(c)(1)(A)*

Defendant seeks modification (and in particular a reduction) of her sentence based on several enumerated alleged "extraordinary and compelling" reasons, under U.S.S.G. § 1B1.13.[3] Before the Court can reach the merits of this request, it must first determine that Defendant exhausted her administrative remedies. *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020).

Prior to 2018, only the Director of the BOP could move for compassionate release. The First Step Act amended 18 U.S.C. § 3582(c) to allow prisoners to move for compassionate release on their own behalf. *See* First Step Act of 2018, § 603, Pub. L. No. 115- 391, 132 Stat. 5239. Now, under 18 U.S.C. § 3582(c)(1)(A), as modified by the Section 603(b)(1) First Step Act, a district court may under certain circumstances grant a defendant's motion for compassionate release (hereinafter, "defendant-filed motion"). *See United States v. Jones*, 980 F.3d 1098, 1106 (6th Cir. 2020) ("Congress's use of 'may' in § 3582(c)(1)(A) dictates that the compassionate release decision is discretionary, not mandatory.").

To grant such a defendant-filed motion, a court must find that the "exhaustion

---

[3] It should be noted that this is Defendant's second (formal) attempt at receiving a reduction in her sentence under 18 U.S.C. § 3582(c)(1)(A). Defendant filed her first Motion for Sentence Reduction, under 18 U.S.C. § 3582(c)(1)(A), on January 4, 2022, (Doc. No. 1218), which was denied by the Court on the merits, on January 6, 2022 (Doc. Nos. 1220 and 1222). Prior to this, Defendant submitted a letter to the Court, on October 11, 2019, in which she requested a reduction of her sentence. (Doc. No. 1170). This is not recognized as a formal request pursuant to 18 U.S.C. § 3582(c)(1)(A).

requirements" have been satisfied—i.e., a prisoner fully exhausted all administrative rights to appeal with the prison or waited 30 days after her first request to the prison. 18 U.S.C. § 3582(c)(1)(A); *Alam*, 960 F.3d 831 at 833–34. It is a defendant's burden to show she has exhausted administrative remedies and is entitled to compassionate release. *United States v. Williams*, 458 F. Supp. 3d 939, 943 (W.D. Tenn. May 1, 2020) (citations omitted); *United States v. Faraj*, No. 2:13-CR-20564-01, 2021 WL 1857190, at *1 (E.D. Mich. May 10, 2021) (citation omitted). In this case, Defendant claims that she proceeded with filing her Motion with the Court, having received no response from the warden for thirty (30) days. (Doc. No. 1236, PageID #: 7901). As no information to the contrary is before the Court, it finds that Defendant has exhausted her administrative remedies, and may proceed, in its discretion, with determining whether to grant compassionate release to Defendant.

In making such a determination, the Court must: (1) find that "extraordinary and compelling reasons merit a sentence reduction"; (2) find "that the reduction is consistent with 'applicable' Sentencing Commission policy statements"; and (3) consider the factors in Section 3553(a), to the extent they apply. *Jones*, 980 F.3d at 1106 (quoting *United States v. Ruffin*, 978 F.3d 1000, 1003-06 (6th Cir. 2020)). A motion for compassionate release may be denied when any of these three requirements are not met. *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021). Defendant bears the burden to persuade the Court to make such a determination. *United States v. Shabudin*, 445 F. Supp. 3d 212, 214 (N.D. Cal. May 12, 2020); *United States v. Crouch*, No. 5:19-CR-00029-TBR, 2020 WL 1963781, at *3 (W.D. Ky. Apr. 23, 2020).

### ***Extraordinary and Compelling Reasons***

Historically, the BOP had sole authority to file compassionate-release motions. *United States v. McCall*, 56 F.4th 1048, 1053-54 (6th Cir. 2002). And the Sentencing Commission defined

the kind of "extraordinary and compelling" reasons that could merit a sentence reduction: age, certain medical and familial circumstances, and other reasons that the BOP Director deemed to be "extraordinary and compelling." U.S.S.G. § 1B1.13 cmt. n.1(A)–(D) (U.S. Sent'g Comm'n 2016).

The First Step Act of 2018 altered this scheme by authorizing defendants to file compassionate-release motions on their own behalf. *See McCall*, 56 F.4th at 1054. But the Sentencing Commission did not promptly update § 1B1.13 to reflect this change; instead, it continued to state that relief was available "only upon motion by the Director of the [BOP]." *Id.*; U.S.S.G. § 1B1.13 cmt. n.4 (U.S. Sent'g Comm'n 2021). In the absence of an amended policy statement, almost all circuit courts held that the policy statement at that time was inapplicable to defendant-filed motions.[4] As such, the Sixth Circuit determined that, until the Sentencing Commission updated its guidance, § 1B1.13 did not apply to cases in which a defendant filed a compassionate-release motion. *United States v. Washington*, 122 F.4th 264, 266 (6th Cir. 2024) (citing *Jones*, 980 F.3d at 1109). Accordingly, district courts had discretion to decide what constituted extraordinary and compelling reasons when evaluating a defendant-filed motion. *United States v. Hunter*, 12 F.4th 555, 561–62 (6th Cir. 2021).

But that discretion was not unbridled. *United States v. Hunter*, 12 F.4th 555, 562 (quoting *Martin v. Franklin Capital Corp.,* 546 U.S. 132, 139 (2005)). Instead, the phrase "extraordinary and compelling" was to be interpreted "'in accord with the ordinary public meaning of its terms at the time.'" *McCall*, 56 F.4th at 1055 (quoting *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1738

---

[4] *See, e.g., United States v. Ruvalcaba*, 26 F.4th 14, 20–24, 28 (1st Cir. 2022); *United States v. Brooker*, 976 F.3d 228, 235 (2d Cir. 2020); *United States v. Andrews*, 12 F.4th 255, 259 (3rd Cir. 2021); *United States v. McCoy*, 981 F.3d 271, 281–82 (4th Cir. 2020); *United States v. Shkambi*, 993 F.3d 388, 392–93 (5th Cir. 2021); *United States v. Jones*, 980 F.3d 1098, 1107–11 (6th Cir. 2020); *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020); *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021) (per curiam); *United States v. McGee*, 992 F.3d 1035, 1050 (10th Cir. 2021); *United States v. Long*, 997 F.3d 342, 355 (D.C. Cir. 2021). But *see United States v. Bryant*, 996 F.3d 1243, 1262 (11th Cir. 2021) (holding that the policy statement is applicable to motions filed by defendants).

(2020)). Congress enacted the compassionate release statute in 1984. *Id.* at *1052-53*. Given the respective definitions for those two terms at that time (which may not have materially changed since then), "extraordinary and compelling reasons" meant reasons that are both (1) "'most unusual,' 'far from common,' and 'having little or no precedent,'" (i.e., extraordinary) and (2) "'forcing, impelling, driving'" (i.e., compelling). *Hunter*, 12 F.4th at 562 (quoting Webster's Third New International Dictionary: Unabridged 463, 807 (1971)); *see also McCall*, 56 F.4th at 1055 (same). Courts also could not treat "nonretroactive changes in sentencing law" as constituting "extraordinary and compelling reasons" for awarding relief. *McCall*, 56 F.4th at 1055.

Effective November 1, 2023, the Sentencing Commission amended U.S.S.G. § 1B1.13, thus revising the Sentencing Commission's policy statement as to what may count as an extraordinary and compelling reason for relief, *regardless* of who files the motion.[5] And to grant a motion for compassionate release, a court now must, in addition to finding that the other elements of the compassionate-release standard are satisfied, find that granting such relief "is consistent with" Policy Statement 1B1.13, which sets forth the circumstances under which an extraordinary and compelling reason for compassionate release would exist. *See* 18 U.S.C. § 3582(c)(1)(A). The enumerated circumstances under § 1B1.13 that provide extraordinary and compelling reasons for compassionate release under 18 U.S.C. § 3582(c)(1)(A) are as follows:

> (1) certain medical circumstances of the defendant; (2) age of the defendant; (3) family circumstances of the defendant; (4) defendant, while in custody, becoming the victim of certain sexual or physical abuse committed by or at the direction of a correctional officer; (5) any other circumstance or combination of circumstances that, when considered by themselves or together with any of the four just-listed circumstances, are similar in gravity to those circumstances; and (6) the defendant having received an unusually long sentence.

---

[5] At present, there is considerable uncertainty as to whether the amended policy statement is invalid (on the alleged grounds that it was promulgated in excess of its congressionally-delegated authority and in violation of the separation of powers) and, if not, is binding on courts. *See United States v. Mitchell*, No. 1:12-CR-20332-01, 2024 WL 3673533, at *3 n. 2 (E.D. Mich. Aug. 6, 2024). For purposes of the Motion, however, the Court will assume that U.S.S.G. § 1B1.13 as amended is valid and binding on the Court.

U.S.S.G. § 1B1.13.

Here, Defendant bases her request for compassionate release on five purported extraordinary and compelling reasons: (1) her sentence allegedly being based in part on acquitted conduct; (2) her sentence allegedly being unusually long; (3) an alleged sentencing disparity allegedly in violation of the Fourteenth Amendment; (4) alleged family circumstances; and (5) alleged rehabilitation of Defendant.[6]

### (1) Consideration of Acquitted Conduct

Defendant apparently argues her sentence is excessive because (according to Defendant) the sentencing court considered "acquitted conduct" in calculating her sentence. (Doc. No. 1236, PageID #: 7911). U.S.S.G. § 1B1.3 directs the court how to determine "relevant conduct"—i.e., conduct that is to be considered in calculating the guideline range even if it is not part of the conduct of any offense(s) of conviction. *United States v. Preece*, No. 22-5297, 2023 WL 395028, at *3 (6th Cir. Jan. 25, 2023), cert. denied, 144 S. Ct. 164, 217 L. Ed. 2d 62 (2023).

"Acquitted conduct" appears in § 1B1.3(c), stating that "[r]elevant conduct does not include conduct for which the defendant was criminally charged and acquitted in federal court, unless such conduct also establishes, in whole or part, the instant offense of conviction." U.S.S.G. § 1B1.3(c). Defendant complains that her sentencing calculation was based on relevant conduct for which she was acquitted (i.e., the conduct underlying Count One). (Doc. No. 1236, Page ID #: 7911). But it is clear and indisputable that Defendant was charged in the superseding indictment convicted with (and *only* with) conspiring to violate launder proceeds of the drug conspiracy

---

[6] Defendant lists Amendment 821 among her asserted extraordinary and compelling reasons; however, the Court finds that Amendment 821 is relevant primarily to 18 U.S.C. § 3582(c)(2) rather than primarily to 18 U.S.C. § 3582(c)(1), and therefore, discusses that Amendment not here but rather in Section III.

charged in Count One, in violation of 18 U.S.C. § 1956(h) (i.e., Count Two).[7] (Doc. Nos. 547 and 940). Defendant was not charged in Count One; thus, she could not have been, and was not, acquitted on that count. So, as the Government points out in its Response, (Doc. No. 1250, PageID #: 7970), Defendant's sentence has not been "inflated due to acquitted conduct," (Doc. No. 1236, PageID #: 7911), because—put simply—there was no conduct of which Defendant was acquitted in this case. So even if the consideration of acquitted conduct in sentencing Defendant could have constituted extraordinary and compelling reasons, that reason is simply inapplicable in this case.

### (2) Unusually Long Sentence

Defendant argues that her sentence is usually long and creates a sentencing disparity between her sentence and those of similarly situated defendants. (Doc. No. 1236, PageID #:7916-17). In its Response, the Government argues that Defendant identifies no change in the law and instead merely asserts that her sentence is exceptionally harsh and not in line with sentences others have received for such offenses. (Doc. No. 1250, PageID #: 7970).

Defendant's Motion relies on U.S.S.G. § 1B1.13(b)(6), which now applies to defendant-filed motions for compassionate release. *See* U.S.S.G. § 1B1.13(a); *United States v. Fowler*, No. 24-3457, 2024 WL 4925836, at *2 (6th Cir. Nov. 18, 2024) (citing to *United States v. Nash*, No. 23-3635, 2024 WL 1979067, at *3 (6th Cir. Apr. 30, 2024)). That subsection provides that a

---

[7] The guideline range for Count Two, or money laundering, is governed by U.S.S.G. § 2S1.1, which provides that:

> The offense level for the underlying offense from which the laundered funds were derived, if (A) the defendant committed the underlying offense (or would be accountable for the underlying offense under subsection (a)(1)(A) of U.S.S.G. § 1B1.3 (Relevant Conduct); and (B) the offense level for the offense can be determined…

U.S.S.G. § 2S1.1(a)(1). "Relevant conduct," as described in § 1B1.3(a)(1)(A), includes "all acts and omissions committed, aided, abetted, counseled, commanded, induced procured, or willfully caused by the defendant . . . ." U.S.S.G. § 1B1.3(a)(1)(A).

defendant may "present[ ] an extraordinary and compelling reason" for compassionate release if (1) he "received an unusually long sentence[,] . . . has served at least 10 years of the term of imprisonment," and (2) there has been "*a change in the law* (other than an amendment to the Guidelines Manual that has not been made retroactive)" that "would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed." (emphasis added.) U.S.S.G. § 1B1.13(b)(6).

Although Defendant has been incarcerated for more than ten (10) years, she does not identify a specific change in the law that produced a gross disparity between the sentence that was imposed and that which would likely be imposed were she sentenced today. Indeed, Defendant simply proclaims that her sentence is too long, which does nothing to establish an extraordinary and compelling reason to reduce Defendant's sentence.

Finally, it should be noted that although Defendant contends that her sentence is particularly harsh, her offense level, 46, was three levels higher than the maximum offense level recognized in the sentencing table. (Doc. 1101 at ¶97, 100).[8] In other words, Defendant's offense level could have been three levels lower and *still* have been the effective maximum offense level. And were it not for the twenty-year statutory maximum for violations of 18 U.S.C. § 1956(a) (Count Two), Defendant's offense level was such that (i) a sentence of *life imprisonment* would have been within the guideline range; and (ii) the *bottom* of the guideline range would have been 120 months (and 50 percent) higher than the twenty-year sentence that she did receive. Thus, although it is true that Defendant received the statutory maximum sentence of incarceration, it is hardly as if the sentencing judge was somehow reaching upwards to impose the statutory maximum. Rather, in context, the sentencing judge is properly perceived as (appropriately and

---

[8] The Presentence Investigation Report (Doc. No. 1101) was adopted in its entirety by the sentencing judge. (Doc. No. 1092 at 1).

necessarily) *reaching down* (from what the bottom of the guideline range would have been absent the existence of that statutory maximum) to the statutory maximum in order to impose sentence.

To put the matter somewhat differently and succinctly, the sentence imposed (240 months) was the guideline sentence (and would have been well below the guideline range had the statutory maximum been higher). Defendant has made no showing why this is the rare case where a guideline sentence is somehow unusually long.

Consequently, the Court does not find an extraordinary and compelling reason based on an allegedly unusually long sentence.

### (3) Sentencing Disparity under the Fourteenth Amendment

Defendant claims that her sentencing raises concerns under the Equal Protection Clause of the Fourteenth Amendment, based on the disparity between her sentence and typical sentences for those convicted of money laundering. (Doc. No. 1236, PageID #: 7903). Defendant references the 2023 US Sentencing Commission Sourcebook and notes that her 240-month sentence reveals "an extraordinary departure from typical sentencing practices, "where [Defendant] received a sentence nearly four times longer than the highest sentence within the reported maximums for 2023." (Doc. No. 1236, PageID #: 7917). This position is unavailing.

In a case in which the defendant argued that a disparity existed between his and his co-defendants' sentences, the Sixth Circuit held that the Constitution does not require proportionality in sentencing among co-defendants. *United States v. Neal*, 577 F. App'x 434, 452 (6th Cir. 2014). Moreover, Defendant has done nothing to show that the length of her sentence is the result of any discrimination prohibited by the Equal Protection Clause; to the contrary, it is patently explainable by the unusual seriousness of Defendant's offense conduct and her unusually high guideline range.

For these reasons, the Fourteenth Amendment is inapplicable, and the alleged (but actually

nonexistent) ramifications of the Fourteenth Amendment in this case certainly do not qualify as an extraordinary and compelling reason to entitle Defendant to a sentence reduction.

### (4) Family Circumstances

Defendant argues that a sentence reduction is required because her father, aged 89, is battling "diabetes, hypertension, heart disease, hearing loss, high cholesterol, and Alzheimer's disease"; her mother, aged 79, is suffering from "hypertension, high blood pressure, and asthma"; and finally, her daughter "require[s] her mother's guidance and support, especially in managing the significant medical needs of her grandparents." (*Id*. at PageID #: 7918-19). In the Response, the Government discusses only the issues related to Defendant's elderly parents, arguing that the aliments listed by Defendant do not amount to incapacitation, and moreover, that Defendant is not the only individual available to care for her parents, citing her daughter as a possible caregiver. (Doc. No. 1250, PageID #: 7969).

The Sentencing Commission underscores a few scenarios in which a defendant's family circumstances would be extraordinary and compelling. *See* U.S.S.G. § 1B1.13, n.1; *see also United States v. Kelley*, No. 3:16-CR-00133, 2023 WL 3065218, at *6 (M.D. Tenn. Apr. 24, 2023) (Richard, J). First, an imprisoned defendant's child, who is 18 years or older, cannot receive adequate care because the child's primary caregiver dies or becomes incapacitated, or the child is incapable of self-care because of a mental or physical disability or medical condition. *See* U.S.S.G. § 1B1.13(b)(3)(A). Second, an imprisoned defendant's parent(s) are incapacitated, and the defendant is the only available caregiver. *Id*. at § 1B1.13(b)(3)(C). The Court is not convinced that either scenario is present.

To support her argument that her family circumstances constitute to an extraordinary and compelling reason, Defendant provides that her daughter needs "guidance and support" from

Defendant in "managing the needs of [Defendant's parents.]" (Doc. No. 1236, PageID #: 7919). A family member's need for "guidance and support" is neither extraordinary nor compelling, especially considering that *everyone* needs guidance and support (at least at one time or another). Moreover, caring for another person undeniably demonstrates that one can adequately care for oneself, even if one needs "guidance and support." Defendant herself indicates that Defendant's daughter is capable of caring for Defendant's parents. (Doc. No. 1236, Page ID #: 7919). And the fact that Defendant's daughter is capable of caring for Defendant's parents also disproves that Defendant is the only available caregiver for them. Additionally, while Defendant asserts that her "mother, aged 79, suffers from hypertension, high blood pressure, and asthma" (*id*.), these are relatively common medical problems, and, without more, the Court cannot conclude that having these conditions renders Defendant's mother incapacitated or unable to provide guidance and support to Defendant's daughter or care to Defendant's father.

Therefore, Defendant's stated desire to provide guidance and support for her adult daughter and assist her daughter in caring for Defendant's parents does not give rise to extraordinary and compelling reasons for release or a modification of her sentence. As such, the Court is unable to find that extraordinary and compelling reasons exist based on family circumstances.

### (5) Rehabilitation of the Defendant

As the last ground for release, Defendant argues for her release based on her rehabilitative efforts while incarcerated. (Doc. No. 1236, PageID #: 7920). She generally highlights her "participation in educational and religious programs," and then specifically mentions her completion of 2000 Federal Second Chance Act days and vocational training. (*Id*.). The Court commends Defendant's self-improvement efforts while incarcerated and is hopeful that these efforts will serve Defendant well in the future; however, this type of self-improvement is expected

of federal inmates. *See United States v. Hymes*, 19 F.4th 928, 934 (6th Cir. 2021) (recognizing that a prisoner's participation in prison programs and lack of disciplinary infractions are "behavior expected of federal prisoners").

Defendant has not shown that such self-improvement is unusual. Moreover, Congress has instructed that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" for a sentence reduction. 28 U.S.C. § 994(t); *United States v. Washington*, 122 F.4th 264, 268 (6th Cir. 2024). And Defendant has shown no other circumstances that could be combined with rehabilitative efforts to amount to extraordinary and compelling reasons. So, just as the other grounds Defendant offers for a sentence reduction are unavailing, so too is this one.

Therefore, the Court is unable to find that extraordinary and compelling reasons exist based on rehabilitative efforts of Defendant.

*Conclusion*

In sum, Defendant has shown no extraordinary and compelling reasons for a reduction in her sentence, under 18 U.S.C. § 3582(c)(1)(A). Accordingly, the Court need not proceed to the remaining steps of the compassionate-release analysis (i.e., an analysis of the Section 3553(a) factors).[9] *See Elias*, 984 F.3d at 519 ("district courts may deny compassionate-release motions

---

[9] For reference, the sentencing factors set forth in Section 3553(a) include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;

when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others.").

III.     *Motion for Sentence Reduction under 18 U.S.C. § 3582(c)(2)*

Defendant alternatively moves for a sentence reduction under 18 U.S.C. § 3582(c)(2) and U.S. Sentencing Guidelines Amendment 821. This paragraph of 18 U.S.C. § 3582(c)—which is juxtaposed to the above-discussed paragraph (18 U.S.C. § 3582(c)(1)) that addresses compassionate release—provides:

> (c) Modification of an imposed term of imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
> ...
>> (2) in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

*Jones*, 980 F.3d at 1106–07 (citing to 18 U.S.C. § 3582(c)(2)). Usually, "a judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment" and may not be modified

---

> (4) the kinds of sentence and the sentencing range established for—
> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the . . .
>> i) [United States Sentencing Guidelines, ("U.S.S.G.")]—
>> ii) [in effect at the time of sentencing]
>
> (5) any pertinent policy statement—
> A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code; and
> B) [and in effect at the time of sentencing]
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

by a district court except in limited circumstances. 18 U.S.C. § 3582(b). But Section 3582(c)(2) establishes an exception to the general rule of finality: "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o)" and made retroactive pursuant to § 994(u). *Dillon v. United States*, 560 U.S. 817, 824 (2010).

The Supreme Court has read § 3582(c)(2) to prescribe a two-step approach. *United States v. Davis -Malone*, No. 24-1099, 2025 WL 501844, at *2 (6th Cir. Feb. 14, 2025) (citing *Dillon*, 560 U.S. at 826). At step one, a district court must determine whether the statute renders a defendant *eligible* for a sentence reduction. *See id.* at 826–27. To be eligible, a defendant must satisfy a few criteria: the district court must have sentenced the defendant "based on a sentencing range" that the Commission has since reduced, pursuant to 18 U.S.C. § 3582(c)(2), and a shorter sentence must be "consistent with" the Commission's policy statement, namely U.S.S.G. § 1B1.10. *See* 18 U.S.C. § 3582(c)(2).

Section 1B1.10, in turn, imposes other eligibility requirements. *See Dillon*, 560 U.S. at 819. The Commission must have made the general amendment on which the defendant relies retroactive. *See* U.S.S.G. § 1B1.10(a), (d). And that amendment's application to the specific defendant must "have the effect of lowering the defendant's applicable guideline range." *Id.* § 1B1.10(a)(2)(B). Once a court determines that a reduction is consistent with § 1B1.10, it may progress to step two, whereat it considers whether the reduction for which the defendant is eligible is *warranted*, either in whole or in part, according to the factors set forth in § 3553(a). *Davis -Malone*, 2025 WL 501844, at *2 (citing *Dillon*, 560 U.S. at 826-27).

To meet the requirement under § 1B1.10, it appears to the Court that Defendant is relying on Amendment 821. (Doc. No. 1236, PageID #: 7913). Amendment 821 is covered under §

1B1.10, but only as to "parts A and B, subpart 1 only and subject to subsection (e)(2))[.]" *See* U.S.S.G. § 1B1.10(d).

The particular part of Amendment 821 on which Defendant relies is Part B, Subpart 1 (which, as just noted, is covered by § 1B1.10). (Doc. No. 1236, *generally*). This part of Amendment 821 altered the calculation of the guideline range with respect to offenders with zero criminal history points at the time of sentencing. U.S.S.G. § 1B1.3(a)(1)(A) cmt. n.7. Amendment 821, Part B, Subpart 1 created a new Chapter Four guideline at § 4C1.1 (Adjustment for Certain Zero-Point Offenders) to provide a decrease of two levels from the offense level determined under Chapters Two and Three for defendants who did not receive any criminal history points under Chapter Four (so-called "zero-point offenders"). *Id*.

Although Defendant was a zero-point offender, Defendant is ineligible for relief under Part B, Subpart 1 Amendment 821. As the Government submits in its Response, to obtain such relief, a defendant must meet all criteria under § 4C1.1, including that "[a] defendant did not use violence or credible threats of violence in connection with the offense." U.S.S.G. § 4C1.1(a)(3); (Doc. No. 1250, PageID #: 7970). For purposes of § 4C1.1, "'[o]ffense' means the offense of conviction and all relevant conduct under § 1B1.3 (Relevant Conduct) unless a different meaning is specified or is otherwise clear from the context." *Id*. § 1B1.1 cmt. n.1(I). As substantiated at trial, Defendant repeatedly threatened to kill two cooperating witnesses, as well as their families and children. *See* Doc. No. 1136, PageID #: 7260-61, 7300; *Vela-Salinas*, 677 F. App'x at 228, 232.

The Government argues that even if Defendant met the criteria under § 4C1.1, a two-point reduction would have no effect on Defendant's guideline range. (Doc. No. 1250, PageID #: 7971). The Court agrees. Had Defendant received the two-level downward adjustment now prescribed for zero-point offenders, her offense level still would have been 43; that is, it would have been

level 46 minus the two levels as a zero-point offender, resulting in an offense level of 44 that defaults to 43, the maximum offense level recognized in the sentencing table. With an offense level of 43, she presumptively would have had a guideline range of 360-life but would have ultimately had a guideline sentence of 240 months due to the above-referenced statutory maximum term of imprisonment for the offense of conviction.

As Defendant does not meet all the criteria under § 4C1.1, as provided by Amendment 821, and because it would not matter even if she did, the Court finds that Defendant is ineligible for a modification of her sentence under 18 U.S.C. § 3582(c)(2).

IV.     *Conclusion*

Defendant has not shown any extraordinary and compelling reasons for release under 18 U.S.C. § 3582(c)(1)(A). Furthermore, a reduction in the defendant's term of imprisonment is not authorized under 18 U.S.C. § 3582(c)(2) because none of the amendments listed in U.S.S.G. § 1B1.10(d)) (including Amendment 821) are applicable to Defendant. Accordingly, Defendant's Motion (Doc. No. 1236) is **DENIED**.

IT IS SO ORDERED.

ELI RICHARDSON
UNITED STATES DISTRICT JUDGE